United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Ana Caceres, Petitioner | ) |
| | ) |
| v. | ) Civil Action No. 14-61607-Civ-Scola |
| | ) |
| United States of America, | ) |
| Respondent | ) |

### Order Denying Habeas Petition

Petitioner Ana Caceres filed a 28 U.S.C. § 2255 petition for writ of habeas corpus. (ECF No. 1.) After reviewing the record, the petition, and the relevant legal authority, the Court finds that Caceres was not denied effective assistance of counsel. Thus the Court denies the petition. The Court also denies Caceres's request for an evidentiary hearing.

**A. Background**

Petitioner Ana Zoila Caceres was named in a 42-count indictment on June 28, 2011 in the criminal case 11-cr-60147-RNS. (Pet. 2, ECF No. 1.) Caceres did not enter a stipulated factual proffer—rather the Government set forth the essential facts during Caceres's change of plea hearing. (Hear'g Trans. 17:14–19; No. 11-cr-60147, ECF No. 215). The following factual background is derived from the Indictment—to which Caceres agreed to plead guilty in her Plea Agreement—and the stipulated factual proffer in her co-defendant's case. (No. 11-cr-60147, ECF No. 141.) For purposes of habeas analysis, the Court relies only on the Indictment and the transcripts from Caceres's plea and sentencing hearings.

Caceres was a director of the Seamens Harvest Ministries Organization, Inc., an organization that purportedly provided immigration consulting and services to the general public. (Plea Agmt. ¶6, No. 11-cr-60147, ECF No. 143.) Seamens Harvest Ministries prepared and filed applications for immigration benefits on behalf of aliens. (*Id.*) Aliens became members of the organization and made donations in exchange for immigration applications and documentation that a Seamens Harvest Ministries' employees purportedly filled out and filed on the alien's behalf. (Stip. Proffer 2, No. 11-cr-60147, ECF No. 141.) Caceres's co-defendants convinced aliens that they could obtain lawful immigration status once Seamens Harvest Ministries designated them as

religious workers and filed paperwork with the United States Citizenship and Immigration Services (USCIS).  (*Id.*)

After the aliens donated to Seamens Harvest Ministries, Seamens Harvest prepared false, fictitious, and fraudulent I-360 petitions and supporting documentation stating that the members were entitled to lawful immigration status as religious workers.  (*Id.* 2–3.)  More than 1,400 petitions were sent to USCIS by mail.  (*Id.*)  Seamens Harvest received notice from USCIS that the applications were denied but did not inform the aliens and instead told them to continue working with Seamens Harvest Ministries.  Seamens Harvest filed additional applications when aliens began questioning their status.  (*Id.* 5.)  Seamens Harvest fraudulently procured more than $4,000,000 from hopeful aliens who ultimately faced consequences of being in the United States illegally.

After her son, who worked for Seamens Harvest alongside Caceres and Caceres's husband, felt remorse and went to authorities, Caceres was charged by Indictment with conspiracy to encourage and induce aliens to reside in the United States (Count 1); encouraging and inducing aliens to reside in the United States (Counts 2–7; 9–11); conspiracy to make a false statement to a federal agency (Count 14); making false statements to a federal agency (Counts 15–23); conspiracy to commit mail fraud (Count 28); and mail fraud (Counts 29–42).  (Indictment, No. 11-cr-60147 ECF No. 3.)  On May 16, 2012 Caceres entered into a Plea Agreement with the Government and pled guilty during a plea colloquy.  (*See* No. 11-cr-60147  Plea Agreement ECF No. 143; Transcript Plea Colloquy, ECF No. 215.)

After the Court found Caceres fully competent and capable of entering into an informed plea, and that her plea of guilty was knowing and voluntary, the Court accepted the plea of guilty and adjudicated her guilty of the charges in Counts 1 and 28.  (Transcript Plea Colloquy 19:4–14, No. 11-cr-60147 ECF No. 215.)  Caceres was sentenced to 96 months in prison and three years supervised release.  (Transcript Sentenc'g 36:19–21, No. 11-cr-60147 ECF No. 216.)  After sentencing, the Government moved to dismiss Counts 2 through 11, 14 through 23, and 29 through 42 of the Indictment.  (Transcript Sentencing 38:13–21, No. 11-cr-60147 ECF No. 216.)  The Court granted the motion.

Caceres now petitions the Court to vacate her sentence under 28 U.S.C. § 2255, or at a minimum, hold an evidentiary hearing on her constitutional claims for relief.  In her petition, Caceres claims that her counsel was ineffective for failing to investigate and adequately advise Caceres before she entered into a plea and was ineffective during sentencing

### B. Legal Standard

Ineffective assistance of counsel claims are evaluated using a two-prong test. *Strickland v. Washington*, 466 U.S. 668 (1986). First, the petitioner must show that counsel's performance was deficient, and second, the petitioner must show that counsel's deficient performance prejudiced the defense. *Id.* at 691. To prove deficient performance, the defendant must show that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment. To prove prejudice due to deficient performance, the defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial. *Id.* Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The two prong test places a burden on the petitioner to show that his counsel's errors were so serious that the petitioner was deprived of a fair trial, meaning a trial whose result is reliable. *Id.* at 687. Unless Caceres can prove both prongs, the Court cannot find that the conviction "resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction," and "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances," the challenged action "might be considered sound trial strategy." *See Michel v. Louisiana*, 350 U.S. 91, 101 (1955).

The test is not what the best lawyers would have done but whether a reasonable lawyer could have acted in the circumstances as petitioner's counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). Even if a decision seems unwise in retrospect, it will only be held to have been ineffective assistance if it was "so patently unreasonable that no competent attorney would have chosen it." *Dingle*, 480 F.3d at 1099.

### C. Caceres fails to sufficiently prove or support her claims of ineffective assistance of counsel.

Caceres claims she was denied her right to effective counsel as guaranteed by the Sixth Amendment because her attorney failed to adequately

investigate her case and advise her. This general failure, Caceres alleges, resulted in ineffective assistance during her plea and during sentencing.

### 1. Caceres's plea was knowing, intelligent, and voluntary.

Caceres claims that her plea was defective "because it was premised on palpably incorrect information." (Petition 19, ECF No. 1.) But for her counsel's ineffective assistance, she argues, she would have not entered a plea and proceeded to trial. Before a judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that she waives when she enters a guilty plea. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Guilty pleas must be voluntary, knowing, and intelligent and with sufficient awareness of the relevant circumstances and consequences surrounding the plea. *Brady v. United States*, 397 U.S. 742, 748 (1970).

The first prong of *Strickland* requires that a petitioner show her plea was not voluntary because she received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 56–59. The second prong requires that the petitioner show a reasonable probability that, but for counsel's errors, she would have entered a different plea. *Id.* If she cannot meet one prong the Court does not need to address the other prong. *Dingle v. Sec'y for Dep't of Corr's*, 480 F.3d 1092, 1100 (11th Cir. 2007). A defendant's sworn answers during a plea colloquy, sworn representations, as well as representation of his lawyer and the prosecutor, and any findings by the judge in accepting the plea "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977); *Untied States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

Caceres argues that her attorney told her she would receive time-served to induce her to enter a plea. But the record refutes this contention. Caceres's Plea Agreement states:

> The Defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court.

(Plea Agreement ¶11, No. 11-cr-60147, ECF No. 143.) The Plea Agreement also includes the statutory maximums for each count—10 years for Count 1 and 20 years for Count 28. (*Id.* ¶¶ 4–5.) The Agreement also clearly

states that Caceres's offense level was subject to a six-level increase because the offense involved 250 or more victims and an eighteen-level increase because the relevant amount of loss was more than $2,500,000 but not more than $7,000,000. (*Id.* ¶ 10(b)–(c).) Caceres was also warned by the Court that any estimate of sentencing range she had received from her lawyer or anyone else was not binding on the Court. (Plea Transcript 12:25–13:5, 11-cr-60141, ECF No. 215.) Caceres affirmatively stated, under oath, that she understood. (*Id.* ¶13:5.)

During her plea colloquy the Court determined that Caceres's plea was free from coercion, that she understood the nature of the charges and that she understood the consequences of her guilty plea, including the potential sentence. (Plea Transcript 4:2–8:23, No. 11-cr-60147 ECF No. 215); *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005).

Caceres argues that habeas relief is appropriate where "the record does not support the fact that 'the plea represents a voluntary and intelligent choice.'" (Petition 25, ECF No.1 (quoting *Blalock v. Lockhart*, 898 F.2d 1367, 1369 (8th Cir. 1990)). But the record does support a voluntary and intelligent choice. For example, the Court specifically asked Caceres:

> "[Y]ou originally entered a plea of not guilty to the charges in the Indictment. I want you to understand that you have the absolute right to continue to plead not guilty; and if you did you would have the right to have a trial before a judge or jury at which you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt . . . ."

(Plea Transcript 16:11–17, 11-cr-60147, ECF No. 215.) When asked if she understood, Caceres answered "Yes, Your Honor." (*Id.* at 17:7.) A defendant's sworn representations "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 73–74. Caceres's petition does not overcome that barrier. She offers no support for her allegations. A petitioner must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012). Caceres has not shown a reasonable probability that she was induced to enter her plea, and her allegations are refuted by the record and by the representations she made under oath.

### 2. Caceres received effective counseling during sentencing.

Caceres alleges that the Court erred by applying the wrong sentencing guidelines and relying on erroneous information given by the prosecution regarding the number of victims and the amount of loss. Caceres also claims that her attorney failed to investigate the case and failed to provide her with information and discovery.

### a. Caceres's counsel did not violate Caceres's constitutional right to counsel by failing to object to the sentencing enhancement.

Caceres entered into a negotiated, written plea agreement which included the loss amount and the number of victims involved in the offense. Now Caceres claims that her attorney "failed to investigate the appropriate guideline calculation," which prejudiced Caceres. (Pet. 33, ECF No. 1.) Caceres claims that the parties agreed in the plea agreement that "the offense involved 250 or more victims," which resulted in a 6 level increase. (*Id.* 34.) But because the Government explained during the restitution hearing that they had only received claims from around 170 victims, Caceres argues that the Government was unable to substantiate the 250 or more victims which resulted in the six level increase. That enhancement changed her guidelines range from a 78 to 97 months range to a 97 to 121 months range. (*Id.* 36.)

The plea Caceres agreed to in open court stated 250 or more victims, a number she did not contest. Moreover, the fact that only 170 victims came forward does not mean that the Government is unable to substantiate other victims. As the Government notes in its Response, there is a difference "between the provable amount of restitution and the loss attributable to a defendant's relevant conduct." (Resp. 5, ECF No. 6.) Although USCIS received more than 1,400 applications filed on behalf of aliens by SHM and specifically identified at least 250 different aliens who submitted applications prepared or filed by SHM, restitution may only be ordered when there is an identifiable victim who has suffered physical injury or pecuniary loss. *See* 18 U.S.C. § 3663A(c)(1)(B); *United States v. Hassan*, 333 F.3d 1264 (11th Cir. 2003).

When a petitioner alleges a sentencing error, she must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). Even if her counsel's performance was deficient in failing to object to the enhancement—which Caceres has not proven—she cannot show prejudice. Here, Caceres received a sentence that is within the very guidelines she argues were

applicable.  Thus she is unable to show any prejudice.  A sentence within guidelines limitations does not raise any constitutional or statutory question. *Kett v. United States*, 722 F.2d 687, 690 (11th Cir. 1984); *Nelson v. United States*, 709 F.2d 39, 40 (11th Cir. 1981).

At the Rule 11 colloquy she acknowledged and understood the terms of the negotiated, written plea agreement which specifically contained the enhancements.  She cannot demonstrate that either deficient performance or prejudice arising from her counsel's failure to object to the enhancements, since they were agreed to by the Caceres.

And, even if Caceres's counsel erroneously estimated her guidelines without the enhancement, an erroneous estimation of the guidelines does not entitle movant to relief—"an erroneous estimate by counsel as to the length of sentence" is not "necessarily indicative of ineffective assistance."  *Beckaham v. Wainwright*, 639 F.2d 262, 265 (5th Cir. 1981).  Even when an attorney erroneously estimates his client's potential sentence, the movant must satisfy the prejudice requirement of *Strickland* by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.  Instead, during her plea colloquy, Caceres acknowledged that she was facing a 10 year maximum sentence as to Count 1 and a 20 year statutory maximum as to Count 28. (Plea Transcript 13:20–14:5, ECF No. 215.)  She also indicated that she understood the possible sentence she could receive, denied being promised anything, other than set forth in the written plea agreement and denied being threatened or otherwise forced to plead guilty.  (*Id.* 15:2–16:10.)  A defendant's sworn representations, as well as representation of his lawyer and prosecutor and any findings made by the judge in accepting the plea "constitute a formidable barrier in any subsequent collateral proceedings."  *Blackledge*, 431 U.S. at 73–74.  Caceres's self-serving statements that she was misadvised by counsel regarding her sentence-exposure are conclusory and unsupported in the record.

Any argument that there is a sentencing disparity between Caceres and other similarly situated defendants in the Southern District of Florida is unavailing.  The sentence imposed was within the guidelines range, and accorded with her co-defendant, Alers's sentence.

### b. Caceres fails to show that her counsel conducted an inadequate investigation.

Counsel in criminal matters have a duty to "conduct a prompt investigation of the circumstances of the case" and explore facts relevant to the merits of the case.  *Rompilla v. Beard*, 545 U.S. 374, 385–6 (2005).  Caceres

alleges that her attorney failed to conduct an adequate investigation and failed to "keep her apprised of the Government's case." She claims that her attorney failed to interview any of the witnesses from the Seamens Harvest Ministry. An independent investigation, she claims, would have revealed that Seamens Harvest had "schools in Haiti, food distribution centers, and that" it had received cash and donations. (Pet. 31, ECF No. 1.) And an investigation would also have "revealed that Seamens Harvest paid millions of dollars to the United States Government for filing fees on behalf of its members, background checks etc." (*Id.*)

Caceres's allegations are entirely unsubstantiated. She offers no evidence—she does not attach documents or any discovery produced by the Government. Even if she was unable to locate and produce documents she could describe the type of documentation, where it was kept and for how long, and who else might have access to the information. The Court must have something more than baseless allegations before it can grant relief.

The record shows that defense counsel zealously advocated on behalf of Caceres—even hiring an expert witness to examine and test Caceres, and provide mitigating testimony regarding Caceres's personality. Counsel also collected letters from family members and her co-defendant and husband, Alers. (Sentenc'g Transcript 29:1–30:9, ECF No. 216.)

Finally, Caceres fails to show that the Court would have imposed a lesser sentence or met her burden to show that the sentence was unreasonable in light of the record. A sentence must be both procedurally and substantively reasonable. *See Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Ellisor*, 522 F.3d 1255, 1273 (11th Cir. 2007). The record shows that the Court considered movant's statements, the letters, the psychological report, as well as the advisory guidelines and the statutory factors. In addition, the fact that Caceres's 96-month sentence is far below the 20-year statutory maximum she was facing as to Count 28 is also a strong indication of substantive reasonableness. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008).

Caceres's unsupported allegations cannot overcome the strong presumption that her counsel's conduct falls within the wide range of reasonable professional assistance.

### D. Evidentiary Hearing

A petitioner has the burden to establish the need for an evidentiary hearing and is only entitled to a hearing if her allegations, if proved, would establish her right to collateral relief. Further, a hearing is not required on patently frivolous claims or those which are based upon unsupported

generalizations or affirmatively contradicted by the record. *See Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989). Caceres's claims are both unsupported and contradicted by her sworn statements during her plea and sentencing.

### E. Certificate of Appealability

The "[C]ourt must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *See* Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts. A § 2255 petitioner "cannot take an appeal unless a [] circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." *See* Fed. R. App. P. 22(b)(1).

A certificate of appealability is only appropriate "if the applicant has made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)2). To make a substantial showing of the denial of a constitutional right, a section 2255 petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336–37 (2003) (internal citations omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). The Court determines that Caceres failed to demonstrate that there is a reasonably debatable issue whether she was denied a constitutional right. *See Slack*, 529 U.S. at 485. As such, a certificate of appealability is not warranted in this case.

### F. Conclusion

For the reasons explained above, the Court **denies** Caceres's petition because she does not sufficiently support her claims of ineffective assistance of counsel. The Court **denies** Caceres's request for an evidentiary hearing. The Court declines to issue a certificate of appealability. The Clerk is directed to **close** the case. Any pending motions are denied as moot.

**Done and ordered** in chambers, at Miami, Florida, on April 30, 2015.

_____
Robert N. Scola, Jr.
United States District Judge